TaiiIareeko, J.
The relator complains that the defendant in his official capacity refuses to sign a certain contract which he entered into with the city for cleaning all and repairing the unpaved streets of New Orleans for the period of three years, that after due advertisements and specifications, the work was let by public auction, and adjudicated, to him by the Controller at the sum of §14,500 as the lowest bidder, that the adjudication was duly approved by the Common Council; that the notarial act detailing the contract in relation to the work was duly signed by him and his sureties, in conformity with an ordinance of the City Council; that the Mayor aforesaid refuses to sign the written instrument expressing the contract, as by law and the city ordinances he is required to do, and that this absolute refusal of the Mayor to perform his duty in this respect has caused great detriment and injury to the relator. He thereupon applied for and obtained a mandamus from the Judge of the Third District Court of New Orleans, requiring the defendant to show cause why he neglects or refuses to perform the required act as prayed for by the petitioner. The City Attorney on the part of the city intervened in this proceeding, and averred that the resolution No. 633, referred to in relator’s petition was void for want of precision in this, that it does not express the number of years the Mayor was authorized to sign a contract with the relator in relation to the work to be done. That by the terms of the resolution on the subject, the Mayor was authorized to sign the notarial act; but that it is not imperative upon him to do so. That the resolution mentioned, and the contract referred to by the relator were revoked by Special Order No. 122, of General Sheridan, on the 21ct of August, 1867. He then being Military Commander of the Fifth Military District. And lastly, that eight months having elapsed since the passage of the resolution No. 633, and six months since the military order No. 122, without any action in the matter being taken by the relator, by means whereof the said contract cannot now be executed. The intervenor joined the defendant in praying for a dismissal of the application for a mandamus be dismissed at the relator’s costs.
The answer of the defendant is substantially the same as that of the intervenor.
The defendant plead that by the reconstruction laws of Congress all interference with the exercise of the military authority in this District under color of State authority is forbidden. After hearing the parties, the Judge a quo ordered a peremptory mandamus to issue, requiring the defendant to affix his official signature to the written instrument evidencing the contract exhibited in evidence by the relator. The defendant and intervenor have appealed. The Judge a quo granted the peremptory mandamus on the ground that “the Mayor is bound by usage and by a fair interpretation of the city ordinances and the charter which is the organic law of the city to sign the act.”
It is argued on the part of the relator that the military commander was without authority to annul a contract, and that the plea of the Mayor, that the contract was abrogated by an order of General Sheridan is without weight. We shall proceed to examine this qucsuou.
By the act of rebellion on the part of most of the Southern States, and' *520 a combined effort by force of arms to disrupt the National Government, the constitutional and legal State governments existing in these States, prior to the war were broken up. They had been in a state of antagonism to the United States, and by their own act, had destroyed the relations that had existed between them and the National Government. In the case of Louisiana, the Constitution of 18G4 was framed with the view to restore these relations, which she had lost by participation in the rebellion. But neither the State government of this State under that constitution, nor the State governments existing in the other States recently in rebellion, at the time of the enactment of the reconstruction laws were recognized as having a legal and legitimate existence. The State governments then in operation were for purposes of public policy and convenience declared provisional only, and subject at any time to be modified, controlled or superseded by the paramount authority of the United States. The preamble to the first reconstruction act, declares that no legal State governments exist in the several States that were engaged in the rebellion. The first section of that act, directs that the rebel States shall be divided into military districts, and made subject to the military authority of the United Siates. The third section of the same act, announces the duties and powers of the military commanders to be appointed for the several districts. The powers granted by this act, and those of the supplemental act, of the 23d of March, 1867, are quite ample, and seem to clothe the commanders of districts, with a paramount supervisory power over the civil jurisdiction of these States, and a controlling influence over all the administrative functions and powers of State officials.
By the second section of the supplemental act referred to, the military commanders are vested with power, in their discretion “to suspend, or remove from office or from the performance of 'official duties and the exercises of official powers, any officer holding or exercising or professing to hold or exercise any civil or military office or duty in such district under any power, election, appointment, or authority derived from or granted by or claimed under any so-called State or the government thereof, or any municipal or other division, etc. ”
The civil jurisdiction for the reasons noticed, exercised by State and municipal authority, was not suspended, but made subsidiary to military rule. In the ordinary routine of municipal business, the action of the military commander was invoked only in occasional cases; but whenever in his judgment it became proper, it necessarily superseded that of the municipal organization. The action of the City Council, in this view of the state of things, was not paramount and exclusive, but limited and subordinate.
The jurisdiction of the State tribunals in criminal cases was expressly made permissive only. The civil jurisdiction, it is clear, was-intended to be controlled by military power, leaving it within the discretion of the District Commanders when and under what circumstances to exercise that control. Coming then to the matter of the contract which the relator declares upon, we find, that in the judgment of the commander of the District, it presented a case calling for the exercise of his authority, as he declares in his order that “the said contracts being, it is believed, *521 fraudulent in design, and injurious to the best interests of the city, the same are hereby declared to be null and void.”
The entering into the contract with the relator by the city officials, was the exercise of official power. The military commander of the District, we have seen, was clothed with authority to suspend these officials from exercising official powers; and if so, he clearly had the right to eontiol their official action, to suspend, modify or supersede it.
But it is contended that the order of' General Sheridan, if it ever had any force, was annulled by general order No. 40, of his successor. We do not so construe the order No. 40, of General Hancock.- It was not for him to declare inoperative the laws of Congress, nor has he done so. The utmost scope of General Hancock’s order, contemplates as full and general exercise of the civil jurisdiction as may be effectual to maintain the public security and to protect the rights of person and property. It does not directly or impliedly repeal the order of General Sheridan annulling the contract in question.
Some stress seems to be put upon the alleged duty of the defendant to sign the written contract, whether that contract is or is not annulled by the military order. It is contended that he is bound to affix his signature to the act, in order that the party in interest, may bring a direct action against the city to enforce the contract; as in such an action the question as to the effect of General Sheridan’s order, can only be properly inquired into. It would seem a vain and useless thing to require the signature of the defendant in his official capacity to a contract rendered null by competent authority. As this alleged nullity is the main ground of the defence, we see no irregularity in examining it in the present action.
It is therefore ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed. It is further ordered, that judgment be rendered in favor of the defendant and the intervenor, the relator paying costs in both courts.
Behearing refused.